# RECORD IMPOUNDED

**NOT FOR PUBLICATION WITHOUT THE**
**APPROVAL OF THE APPELLATE DIVISION**

This opinion shall not "constitute precedent or be binding upon any court."
Although it is posted on the internet, this opinion is binding only on the
parties in the case and its use in other cases is limited. R.1:36-3.

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO. A-4749-15T1
A-4750-15T1

NEW JERSEY DIVISION OF CHILD
PROTECTION AND PERMANENCY,

    Plaintiff-Respondent,

v.

L.H. and G.H.,

    Defendants-Appellants.

_____

IN THE MATTER OF THE
GUARDIANSHIP OF Las.H., a
minor.

_____

Submitted April 26, 2017 — Decided May 15, 2017

Before Judges Carroll, Gooden Brown and Farrington.

On appeal from the Superior Court of New Jersey, Chancery Division, Family Part, Hudson County, Docket No. FG-09-105-16.

Joseph E. Krakora, Public Defender, attorney for appellant L.H. (Stephania Saienni-Albert, Designated Counsel, on the briefs).

Joseph E. Krakora, Public Defender, attorney for appellant G.H. (Beryl Foster-Andres, Designated Counsel, on the brief).

Christopher S. Porrino, Attorney General, attorney for respondent (Andrea M. Silkowitz, Assistant Attorney General, of counsel; Lauren J. Oliverio, Deputy Attorney General, on the brief).

Joseph E. Krakora, Public Defender, Law Guardian, attorney for minor (Julie E. Goldstein, Assistant Deputy Public Defender, on the brief).

PER CURIAM

Defendants L.H. (Linda) and G.H. (Gary) appeal from a judgment terminating their parental rights to their daughter Las.H. (Lucy).[1] The trial court concluded that termination was appropriate in light of Linda's long struggle with substance abuse disorder, which inhibited her from safely caring for Lucy just as it had for her four other children, none of whom remained in her care, and in light of Gary's relative absence and failure to offer any plan for reunification. Both defendants challenge the court's conclusions and contend that the New Jersey Division of Child Protection and Permanency (Division) failed to establish, by clear and convincing evidence, the four criteria of the best-interests-of-the-child standard embodied in N.J.S.A. 30:4C-15.1(a). The

---

[1] We use pseudonyms for ease of reference and to protect the privacy of the children. R. 1:38-3(d)(12).

Division and the Law Guardian disagree and argue that the trial court's judgment should be affirmed. On July 18, 2016, we consolidated the appeals. Having considered the parties' arguments in light of the record and applicable legal standards, we affirm.

We will not recite at length the history of the Division's involvement with the family, which began in February 2011, when police raided Linda's residence and found 150 vials of cocaine and 299 packets of heroin. This incident resulted in the filing of criminal charges against Linda, and the removal of Linda's then three-year-old daughter, K.U., and nine-month-old son, R.H., from her home. Much of the factual and procedural history that followed is set forth in the comprehensive and thoughtful thirty-one-page written opinion of Judge Bernadette N. DeCastro, who conducted the guardianship trial from which the present appeal is taken. It suffices to say that in July 2012, Linda gave birth to another daughter, C.H., who was removed by the Division on an emergent basis shortly thereafter. Lucy was born in April 2014. The Division soon received a referral and responded to the hospital to learn that both Linda and Lucy tested positive for marijuana. Linda admitted to Division caseworkers that she used the substance three weeks earlier, and she identified Gary as the child's father, though she had not seen him in two months. Gary was eventually

confirmed as the father through a paternity test in May 2016. The Division removed Lucy on an emergent basis upon her discharge from the hospital a few days later, and placed her with Gary's niece, T.B., with whom she has since remained.

In July 2015, the Division filed a verified complaint to terminate Linda and Gary's parental rights and award the Division guardianship of Lucy. Judge DeCastro conducted a seven-day guardianship trial in May 2016. The Division presented the testimony of expert psychologist Gerard A. Figurelli, Ph.D.; Division caseworkers Jayme Scott and Kimberly Shipmon; and Lucy's foster mother, T.B. Linda presented testimony from psychologist Barry Katz, Ph.D.; Gary; Scott; Shipmon; Best in Care employee Vanessa Recalde; and Visiting Homemaker Services employee Shakira Tulloch.

Judge DeCastro carefully reviewed the evidence presented, and concluded the Division proved by clear and convincing evidence the four prongs of the best interests test, codified in N.J.S.A. 30:4C-15.1a(1) to -15.1a(4), that:

> (1) The child's safety, health or development has been or will continue to be endangered by the parental relationship;
>
> (2) The parent is unwilling or unable to eliminate the harm facing the child or is unable or unwilling to provide a safe and stable home for the child and the delay of

permanent placement will add to the harm
. . . ;

(3) The [D]ivision has made reasonable efforts to provide services to help the parent correct the circumstances which led to the child's placement outside the home and the court has considered alternatives to termination of parental rights; and

(4) Termination of parental rights will not do more harm than good.

See also N.J. Div. of Youth & Family Servs. v. A.W., 103 N.J. 591, 604-11 (1986).

On appeal, both defendants challenge the trial court's findings with respect to the statutory best interests test, which balances a parent's right to enjoy a relationship with his or her child, and the State's interest in protecting the welfare of children. In re Guardianship of K.H.O., 161 N.J. 337, 346-47 (1999). "The four criteria enumerated in the best interests standard are not discrete and separate; they relate to and overlap with one another to provide a comprehensive standard that identifies a child's best interests." Id. at 348.

The scope of our review of the trial court's findings of fact is well established. The trial court's factual findings will be sustained on appeal as long as "they are supported by 'adequate, substantial and credible evidence' on the record." N.J. Div. of Youth & Family Servs. v. M.M., 189 N.J. 261, 279 (2007) (quoting

In re Guardianship of J.T., 269 N.J. Super. 172, 188 (App. Div. 1993)).

Furthermore, our deference to the trial court's findings of fact is "especially appropriate 'when the evidence is largely testimonial and involves questions of credibility.'" Cesare v. Cesare, 154 N.J. 394, 412 (1998) (quoting In re Return of Weapons to J.W.D., 149 N.J. 108, 117 (1997)). We also give considerable deference to the factual findings of the Family Part, due to that court's "special jurisdiction and expertise in family matters." Id. at 413.

A. First Prong

As noted, prong one of the best interests standard requires the Division to establish that "[t]he child's safety, health or development has been or will continue to be endangered by the parental relationship[.]" N.J.S.A. 30:4C-15.1(a)(1). To satisfy this prong, the Division must show that the parental relationship harmed the child's health, safety, or development, and the parental relationship will likely have a continuing deleterious effect on the child. K.H.O., supra, 161 N.J. at 347. The harm may, but need not, be physical. In re Guardianship of K.L.F., 129 N.J. 32, 43-44 (1992). Termination may be warranted on a showing of "[s]erious and lasting emotional or psychological harm" resulting from a parent's action or even inaction. Id. at 44. Indeed, a

"parent's withdrawal of . . . solicitude, nurture, and care for an extended period of time is in itself a harm that endangers the health and development of [a] child." In re Guardianship of D.M.H., 161 N.J. 365, 379 (1999).

Although a single instance may suffice, the standard may be satisfied by evidence of an accumulation of harm over time. N.J. Div. of Youth & Family Servs. v. P.P., 180 N.J. 494, 506 (2004). That is the case irrespective of whether the parent is morally culpable for that harm, so long as the parent is "unable or unwilling to prevent [it] irrespective of [its] source[.]" M.M., supra, 189 N.J. at 289. Moreover, the court need not wait "until a child is actually irreparably impaired by parental inattention or neglect." D.M.H., supra, 161 N.J. at 383. A risk of harm may be shown "'not only from [a parent's] past treatment of the child in question but also from the quality of care given to other children in [his or her] custody.'" N.J. Div. of Youth & Family Servs. v. I.H.C., 415 N.J. Super. 551, 573-74 (App. Div. 2010) (quoting J. v. M., 157 N.J. Super. 478, 493 (App. Div.), certif. denied, 77 N.J. 490 (1978)).

In her thorough written opinion, Judge DeCastro observed that the issue here was "more than whether [Linda] had achieved sustained remission for her marijuana substance abuse disorder." Rather, the concern was whether it would be safe to return Lucy

to her mother's care in light of the totality of the circumstances attendant to Linda's protracted history with the Division over several years. Linda's initial success in battling substance abuse was short-lived, and, although she had completed treatment again and regularly attended AA/NA meetings, she admittedly used alcohol recently to cope with stress after the death of her father and uncle. During that period, she withdrew from services and visitation and refrained from contact with the Division, leaving no way of knowing whether she had also relapsed into marijuana abuse. It was "against this backdrop" that the judge conducted her analysis.

The judge noted that Linda had been unable to provide Lucy with a safe and stable home since her birth, just as she had been unable to do for her other four children, all now outside her custody. According to both experts, Linda suffered from a substance abuse disorder, the impact of which necessitated her children's removal on multiple occasions, including then-newborn Lucy's, when both mother and child tested positive for marijuana. Although she had participated in numerous treatment programs over the years, her history showed a troubling pattern of alternating periods of remission and relapse. In that light, the judge found persuasive Dr. Figurelli's opinion that Linda presented an elevated risk for relapse, which presented a risk of harm to Lucy

A-4749-15T1

if returned to Linda's care.

Linda had a history, moreover, of "removing herself from her children's lives when her life bec[ame] too stressful." That was the case not only recently when she refrained from visitation with Lucy following her father's and uncle's deaths, but also two years prior, when she lost contact with the Division for several months while it had custody of R.H. and C.H. We conclude that Judge DeCastro properly recognized these absences as presenting further danger to Lucy's health and development.

For his part, Gary failed to comply even with the preliminary psychological evaluation required to evaluate what services he would need to ensure that Lucy could safely be placed in his custody. Gary told the Division caseworkers not to contact him, never offered himself as a resource for the child prior to trial, and instead supported her reunification with Linda. In all, the judge aptly concluded the Division had shown a risk of harm to the child arising from her relationship with both parents.

As noted, Lucy tested positive for marijuana at birth. Both defendants assert that circumstance was insufficient to constitute harm to the child, noting that Lucy was otherwise healthy, never exhibited any withdrawal symptoms, and had no developmental difficulties or any other special needs. Defendants are correct that an instance of maternal marijuana use during pregnancy does

not in itself constitute harm, K.H.O., supra, 161 N.J. at 349-50, but that was not the focus of the court's finding here. Instead, the judge concluded that Linda's longstanding history with substance abuse and its impediment to the safe parenting of children in her care, including periods of relapse and withdrawal from their lives in times of stress, presented a risk of harm to Lucy. Gary may not have been culpable for Linda's marijuana use, but it suffices that he was unable to protect Lucy from the harm that stemmed from it, particularly given his broad refusal to cooperate with the Division or otherwise take the steps necessary to safely assume custody of his child.

Linda emphasizes her completion of treatment and maintenance of sobriety. However, Dr. Figurelli's testimony, Linda's own admission of alcohol use, and her failure to submit to urine screens, sufficiently support a finding that Linda had not yet achieved sustained remission, lacked an understanding that her continued alcohol use jeopardized that goal, and consequently remained at risk of relapse. With respect to Linda's missed visits with Lucy, the judge acknowledged that some were the Division's fault, but nonetheless found based on the documentary evidence and the caseworkers' testimony that most of them had been either missed or cancelled by Linda. Consequently, we conclude that sufficient credible evidence in the record supports the court's finding that

the Division satisfied the first prong of the best interests test.

B. Prong Two

Under the second prong, the court must consider not only whether the parent can remove the danger to the child, but whether he or she can do so "before any delay in permanent placement becomes a harm in and of itself." N.J. Div. of Youth & Family Servs. v. A.G., 344 N.J. Super. 418, 434 (App. Div. 2001), certif. denied, 171 N.J. 44 (2002). Indeed, courts must be "cognizant of New Jersey's strong public policy in favor of permanency." K.H.O., supra, 161 N.J. at 357. Termination may be appropriate, for example, where a parent's ongoing history of substance abuse has caused or contributed to the parent's inability to provide a safe and stable home for the child. Id. at 352-54. Furthermore, this prong can be satisfied "if there is clear and convincing evidence that the child will suffer substantially from a lack of stability and a permanent placement and from the disruption of [his or] her bond with foster parents[.]" Id. at 363.

Here, Judge DeCastro was unpersuaded by Linda's assertion that her negative urine screens and successful completion of treatment demonstrated her consistent abstinence from marijuana use since November 2014. The judge noted that Linda failed to submit to several random screens in the intervening time and admitted to Dr. Figurelli that she had used alcohol despite her

participation in AA/NA. The judge accepted Dr. Figurelli's opinion that Linda's failure to abstain from all mind-altering substances, including alcohol, was contrary to the goals of her treatment and precluded her from achieving sustained remission. The judge concluded Linda "show[ed] a consistent pattern of poor judgment, lack of insight[,] and risky behavior," as well as an "inability to place her child's needs above her own[,]" which presented a continued risk of harm to Lucy's health and development. Further, Linda's absence from visitation while addressing her own emotional difficulties also showed a "lack of commitment" to the child.

Judge DeCastro found that Gary had yet to proffer a viable parenting plan, failed to explain how he would care for Lucy on a daily basis, and generally "made no attempt to establish a safe and stable home" for her. Nor did he participate in a bonding evaluation, thus making it impossible for the court to determine whether any bond existed between him and Lucy. In light of the child's need for permanency, the judge found that neither defendant could sufficiently mitigate the risk of harm that occasioned Lucy's removal to ensure a safe reunification with her in the reasonably foreseeable future.

There is sufficient credible evidence in the record to support the judge's factual findings. The record supports the judge's conclusion that the Division established the second prong of

N.J.S.A. 30:4C-15.1(a) with clear and convincing evidence. Linda and Gary's contentions to the contrary are without sufficient merit to warrant further comment. R. 2:11-3(e)(1)(E).

C. Prong Three

The third prong of the test for termination of parental rights requires the Division to establish that it "has made reasonable efforts to provide services to help the parent correct the circumstances which led to the child's placement outside the home and the court has considered alternatives to termination of parental rights[.]" N.J.S.A. 30:4C-15.1(a)(3). "[A]n evaluation of the efforts undertaken by [the Division] to reunite a particular family must be done on an individualized basis." D.M.H, supra, 161 N.J. at 390. The reasonableness of the Division's efforts are "not measured by their success." Id. at 393.

In her written opinion, Judge DeCastro concluded the Division had "taken more than ample steps toward reunification." The judge thoroughly recounted referrals the Division made for Linda — including psychological and substance abuse evaluations, urine screens, treatment programs and counseling, and anger management and parenting classes - with which she complied to varying degrees and achieved varying levels of success. The judge noted the Division had also facilitated supervised visitation, referred Linda for a parenting mentor, and afforded her access to

therapeutic visits through Catholic Charities until she was discharged from the program for noncompliance.

The judge explicitly considered and rejected Linda's contentions that the Division failed to refer her for recommended counseling or was at fault for her inconsistent visitation with Lucy. Neither Linda nor Gary took advantage of the opportunity to visit Lucy in her foster home, despite the foster mother's willingness to permit such visits.

The judge further rejected Linda's contention that the Division's efforts were deficient for failure to provide a parenting mentor in her home. The judge credited testimony from a caseworker that such mentors were used in cases of reunification. Here, the permanency plan was changed to termination soon after Linda was recommended for a mentor, thus rendering the recommended service no longer appropriate. In any event, the judge reasoned, Linda had been offered a parent mentor service from Best in Care, available either in-home or out-of-home, but Linda refused the service.

Gary refused to even submit to an evaluation and told the Division that, if interested, he would contact the caseworker. The judge concluded that the Division's efforts as to both defendants, while unsuccessful in ensuring reunification, were nonetheless reasonable. Moreover, the judge found, and neither

defendant disputes, that because Lucy's foster mother understood the difference between kinship legal guardianship (KLG) and adoption, but preferred adoption, a KLG arrangement was not a viable alternative to termination. See P.P., supra, 180 N.J. at 509.

The judge's conclusion that the Division satisfied the third prong of the best-interest standard finds the support of sufficient credible evidence in the record. Defendants' arguments to the contrary warrant no additional discussion. R. 2:11-3(e)(1)(E).

D. Prong Four

To satisfy the final prong, the Division need not demonstrate that no harm will result from termination, but that any such harm will be outweighed by the harm resulting from non-termination. K.H.O., supra, 161 N.J. at 355. This analysis is meant to act as a fail-safe and prevent "an inappropriate or premature termination of parental rights" even if the Division satisfies its burden as to the rest of the standard. N.J. Div. of Youth & Family Servs. v. F.M., 211 N.J. 420, 453 (2012).

"Inherent in the fourth [prong] is that a child has a 'paramount need for a permanent and defined parent-child relationship' . . . as well as a deep need for a nurturing adult, commonly termed the 'psychological parent.'" N.J. Div. of Youth & Family Servs. v. C.S., 367 N.J. Super. 76, 119 (App. Div.)

(quoting <u>In re Guardianship of J.C.</u>, 129 <u>N.J.</u> 1, 26 (1992)), <u>certif. denied</u>, 180 <u>N.J.</u> 456 (2004). When a parent has harmed a child through abuse or neglect and is unable to remediate the danger to the child, and when the child has bonded with foster parents who have provided a safe and nurturing home, termination of parental rights likely will not do more harm than good. <u>N.J. Div. of Youth & Family Servs. v. E.P.</u>, 196 <u>N.J.</u> 88, 108 (2008). "The 'good' done to a child in such cases in which reunification is improbable is permanent placement with a loving family[.]" <u>Ibid.</u>

Here, Judge DeCastro carefully recounted the results of both experts' bonding evaluations, noting that Lucy exhibited some familiarity with Linda, but a deep emotional attachment only to her foster mother, T.B. While that bond was insufficient in itself to justify termination, defendants failed to remedy the circumstances that had occasioned the child's removal and continued to be unable to offer her a safe, stable home. Moreover, separation of the child from her foster mother would cause her serious harm. The judge therefore concluded that termination would not do more harm than good.

Linda contends the trial judge erred in disregarding Dr. Figurelli's testimony that Lucy would suffer harm if her relationship with Linda were severed and that, if the child were

gradually transitioned to an adequate caretaker, it would be possible for her to make a safe transition. Linda cites Dr. Katz's opinion that she would be able to safely act as Lucy's primary caretaker.

The judge accepted Dr. Figurelli's testimony as more persuasive. It is true Dr. Figurelli stated that Lucy would likely suffer the same harm from separation in the long term that would attend any termination of parental rights. However, as the judge recognized, Dr. Figurelli further opined that Lucy would suffer little short-term loss as a consequence, contrasted with the enduring harm she would suffer from separation from her foster mother in favor of a failed reunification with Linda. Moreover, although Dr. Figurelli acknowledged the possibility that a safe transition to another adequate caretaker remained plausible, he doubted that a safe, successful transition of the child to Linda's care could likely be accomplished within the foreseeable future. The judge could, and did, rely on those opinions to conclude that, while some harm would result from termination of Linda's parental rights, it would be outweighed by the harm resulting from non-termination.

Gary in turn asserts that Lucy's bond with her foster mother developed only because she had been improperly removed at birth despite the absence of any harm, and that any loss she might suffer

17

from disruption of that bond should therefore not be held against him. He further contends the court neglected to consider that he had resided with Lucy for the first year of her life and thereafter participated in visitation, during which he invariably engaged in appropriate interaction with her. Like Linda, Gary points to Dr. Figurelli's testimony as to the possibility that Lucy could be safely transferred to another adequate caretaker, and asserts that he would be more capable of safely undertaking such a transfer than Linda, because he previously spent more time with the child.

We find little merit to Gary's arguments. The trial court was not bound to credit Gary as to his purported involvement in the child's early life, especially given his avoidance of the Division during that time. Nor was the court compelled to accept his assertions, without foundation in any expert evidence due to his failure to submit to an evaluation, that the child could safely be placed in his care or that he could successfully mitigate any harm occasioned by the disruption of Lucy's bond with T.B. To the extent Gary contends that such a bond would not have developed in the first place had the child not been improperly removed, the court's sound conclusion as to the first prong dispels that notion.

In summary, we are bound by the trial judge's factual findings so long as they are supported by sufficient credible evidence in the record. M.M., supra, 189 N.J. at 279. Here, Judge DeCastro

accepted the Division's evidence as credible, and properly found the Division satisfied all four prongs of N.J.S.A. 30:4C-15.1(a) by clear and convincing evidence. To the extent we have not specifically addressed any of defendants' remaining arguments, we deem them without sufficient merit to warrant discussion. R. 2:11-3(e)(1)(E).

Affirmed.

I hereby certify that the foregoing is a true copy of the original on file in my office.

CLERK OF THE APPELLATE DIVISION